MARSH & CO. v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

Contract: WITH FIRM: CONDITIONS: EVIDENCE. The plaintiff firm had recently been organized, and it consisted of three persons, of whom M. and B. were two. These two had a conversation with defendant's agent to the effect that they were to have a certain rebate on every car of stock shipped by them over defendant's road, provided the "pool broke" or the rates were "cut." The agreement was with M. and B. personally, as defendant's agent knew nothing at that time of the plaintiff firm. The plaintiff firm now seeks to recover the rebate, but *held* that the evidence (see opinion) failed to show that the pool was broken or the rates cut, and that, therefore, the conditions of the agreement had never been fulfilled, conceding that plaintiffs were entitled to its benefits if they had been.

*Appeal from Appanoose District Court.*—HON. H. C. TRAVERSE, Judge.

FILED, OCTOBER 5, 1888.

THE plaintiff claims that in February, 1886, it made a verbal agreement with defendant to the effect that on all shipments of stock to be made by plaintiff from Seymour, Iowa, to Chicago, the defendant would pay to plaintiff a rebate of $19.50 from the regular schedule rate of fifty-two dollars on each car-load of stock so shipped; that

during the year 1886, and the month of January, 1887, plaintiff shipped from Seymour to Chicago, over defendant's railway, twenty-nine cars of live stock; that there was deducted from the selling price of the stock, and paid to defendant, fifty-two dollars for each car; that defendant has failed to pay the agreed rebate; and that there is due on account thereof the sum of $565.50. These claims are denied by defendant. The cause was tried to a jury, and a verdict returned and judgment rendered in favor of the plaintiff for the amount claimed. The defendant appeals.

*Thos. S. Wright* and *Tannehill, Vermilion & Haynes*, for appellant.

*George D. Porter*, for appellee.

ROBINSON, J.—I. The plaintiff is a co-partnership, of which Harlan Marsh, H. F. Babbitt and J. R. Babbitt are the members. Plaintiff claims that the contract in question was made with an agent of defendant named Conklin. The negotiations for the shipment of stock were carried on by H. F. Babbitt and Conklin, in the presence of Marsh. H. F. Babbitt testifies that in February, 1886, he and Marsh bought two car-loads of live stock, and went to Seymour to see about shipping them. That Conklin told them that the rates were uniform, and that he could not deviate from them, but that he said, "We'll take care of you, and protect you." That upon being told that they would not ship a car from there at fifty-two dollars, Conklin said, "We don't know how long this pool may last; we can't tell. It may pull out right away;" and, "We'll take care of you." That, upon being asked for something more definite, Conklin said: "If they go to make any rates on the other roads we don't want you to ship there. If they go to cut, you can have your rate." H. F. Babbitt also testified that the two loads, if not sold, were to run over until the other stock was shipped. That "our old rate on the Rock Island was $32.50 per car. The tariff rate was $52.50. After the first of January, 1886, they had taken

a half dollar off the schedule rate, and billed it at $52. The rebate was $19.50." Also: "I understood we were to get nineteen dollars and something less than the regular rate; that we were to have that much less than anybody else as soon as the pool broke. I don't think the dollars were mentioned as to anything we were to have off. The amount was not mentioned; merely our previous rate." Also: "He said whenever the pool was open, and they went to cutting rates, that we should have our rate from Seymour." Marsh testified that Babbitt made the contract with Conklin, and that " he told us they were pooled then, and were not giving any rates; but if the pool broke at any time we could have our old rate. That was the amount of the conversation, as near as I can give it." The terms of the so-called "pool" are not stated by any one, unless by Conklin. Marsh states that he does not know what the old rate was, excepting as Babbitt told him. It appears that the firm of Marsh & Co. had commenced business about two weeks before the conversation with Conklin was had; that it then had on hand seven car-loads of stock, and was intending to buy and ship stock. Prior to that time it had never shipped any stock over defendant's road, nor was any stock in fact shipped until the next month of June. The firm had never had a rate from defendant, and made no inquiries as to rates when the shipments were made. Of the twenty-nine cars of stock belonging to plaintiff, twenty-four were shipped in Marsh's name, four in the name of one Lewis, and one in the name of C. L. Cox. The shipments in the name of Lewis and Cox seem to have been so made for the purpose of obtaining passes. It is claimed by H. F. Babbitt, however, that Conklin said it made no difference in whose name the stock was shipped. We have set out the substance of the evidence given on behalf of plaintiff to sustain the alleged agreement. Nothing was said during the conversation with Conklin in regard to the firm of Marsh & Co., and Conklin testifies that he had never heard of it. He also denies having made the agreement alleged. If the evidence given on the part of

Marsh & Co. v. The Chicago, R. I. & P. Ry. Co.

plaintiff be true, and the conflicting evidence given on the part of defendant be false, then an agreement is established by which defendant was required to give to Marsh and H. F. Babbitt a rebate on each car of stock they shipped, "if the pool broke," or "if they go to cut." But it is not shown that these two men ever shipped any stock after the agreement is said to have been made. It is true that Babbitt testifies that he made the arrangement for plaintiff, but it nowhere appears that defendant had notice of that fact. The arrangement was in terms made for the benefit of the two partners, who were present at the interview. By the terms of the agreement as claimed by plaintiff, it was not to go into effect until the "pool" should be broken, or until another railway company should give a cut rate. A mere offer to give such rates was not within the alleged terms. Neither of the stipulated conditions is proven. The only evidence relating to these conditions was to the effect that an agent of a rival company told plaintiff, about the time it made its first shipment, that he could do it some good in the way of rates. This agent testifies that he was authorized to make plaintiff a thirty-five dollar rate at the time in question, and a short time afterwards was authorized to make a thirty dollar rate, but he states that he made no offer to plaintiff, and does not show that a cut rate was actually made to any one. Conklin testifies that there was no pool, but an agreement to maintain schedule rates. Whatever the fact was, we are of the opinion that plaintiff has failed to show that any pool was broken, or cut rates given.

II. Other questions are discussed by counsel, but the views we have already expressed are sufficient as to all questions which are likely to arise on another trial For the reasons indicated the judgment of the district court is

REVERSED.